

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, a Delaware limited liability company, and DD IP HOLDER LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> WALID ELKHATIB, an individual, and MAZEN DUNKIN DONUTS, INC., an Illinois corporation, <br><br> Defendants. | 09 C 1912 <br><br> Hon. Charles R. Norgle |

## MEMORANDUM OPINION

CHARLES R. NORGLE, District Judge

Before the Court is Plaintiffs' Motion for Preliminary Injunction and Attorneys' Fees. For the following reasons, Plaintiffs' Motion for Preliminary Injunction is granted and Plaintiffs' Motion for Attorneys' Fees is denied.

## I. BACKGROUND

### A. The Parties

Plaintiff Dunkin' Donuts Franchised Restaurants LLC operates a franchise system of restaurants under the trade name "Dunkin' Donuts" throughout the United States. These franchised restaurants sell, *inter alia*, doughnuts, pastries, coffee, and breakfast sandwiches. Dunkin' Donuts franchisees are licensed to use the trade names, trade dress, and trademarks of Dunkin' Donuts and to operate under what Plaintiffs refer to as the "Dunkin' Donuts System."

1

The Dunkin' Donuts System utilizes distinct and established trademarks and trade dress which Dunkin' Donuts asserts that it has developed at significant expense, consisting of, *inter alia*, specially designed buildings and equipment, equipment layouts, interior and exterior accessories, color and identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

Plaintiff DD IP Holder LLC is an indirect, wholly-owned subsidiary of Dunkin' Brands, Inc., and is the owner of the trademark, service mark, and trade name "Dunkin' Donuts" and related marks. Plaintiffs assert, and Defendants do not deny, that each of their trademarks is fully registered in accordance with the Lanham Act. The Court will refer to Plaintiffs collectively as "Dunkin' Donuts."

Defendant Walid Elkhatib ("Elkhatib") is a citizen and resident of the state of Illinois who owns and operates a retail doughnut, coffee, and sandwich store located at 1901 South Mannheim Road in Westchester, Illinois (the "Westchester Store"). Elkhatib was, but is not currently, a Dunkin' Donuts franchisee for the Westchester Store pursuant to a Franchise Agreement dated December 22, 1997 (the "Franchise Agreement"). Dunkin' Donuts asserts that Defendant Mazen Dunkin Donuts, Inc. ("Mazen") is an Illinois corporation "involved" in the operation of the Westchester Store. The precise nature of Mazen's involvement in the Westchester Store's operations is unclear from the pleadings.[1]

---

[1] Defendants assert that Mazen is either fully dissolved or is in the process of dissolving. Plaintiffs have submitted evidence that as of April 23, 2009, Mazen remains an active Illinois corporation.

## B. Prior Litigation

In August 2002, Dunkin' Donuts informed Elkhatib that the Franchise Agreement, due to expire on April 13, 2008, would not be renewed because of Elkhatib's failure to carry Dunkin' Donuts' full breakfast sandwich product line at the Westchester Store. Elkhatib v. Dunkin' Donuts, Inc., 493 F.3d 827, 828-29 (7th Cir. 2007). Elkhatib, an Arab-American of the Muslim faith who was born in Palestine, maintains that he is forbidden from handling pork products; he therefore refused to sell Dunkin' Donuts breakfast sandwiches with bacon, ham, or sausage. Id. at 828. In response to Dunkin' Donuts' refusal to renew the Franchise Agreement, Elkhatib sued Dunkin' Donuts, alleging racial discrimination. Id. at 829.

Following years of protracted litigation, it became apparent to Dunkin' Donuts and Elkhatib that their dispute could only be resolved through trial. In April 2008, Dunkin' Donuts and Elkhatib therefore entered into a Stipulation and Agreement (the "Stipulation") that allowed Elkhatib to continue operating the Westchester Store until the conclusion of the trial. The case went to trial on March 10, 2009, and resulted in a jury verdict in favor of Dunkin' Donuts on March 13, 2009. March 13, 2009 therefore became the final day Elkhatib was permitted to utilize Dunkin' Donuts' trademarks, trade name, and trade dress at the Westchester Store.

## C. The Instant Litigation

Dunkin' Donuts alleges that following the trial's conclusion, it made repeated attempts to reach an agreement with Elkhatib and his attorney regarding Elkhatib's obligation under the Franchise Agreement and the Stipulation to discontinue the use of Dunkin' Donuts trademarks and trade dress at the Westchester Store. Despite repeated notices to Elkhatib that his use of Dunkin' Donuts' trademarks and trade dress is now unauthorized, Elkhatib allegedly continues to

use those trademarks and trade dress in violation of both the Franchise Agreement, which has expired, and the Stipulation. Dunkin' Donuts further alleges that Elkhatib has not returned, *inter alia*, Dunkin' Donuts' operating manuals and plans, and external signage bearing the Dunkin' Donuts' mark.

In its Verified Complaint, Dunkin' Donuts alleges three Lanham Act violations: Trademark Infringement, Unfair Competition, and Trade Dress Infringement. Dunkin' Donuts seeks, *inter alia*, permanent injunctive relief enjoining Defendants from using Dunkin' Donuts' trademarks, trade name, and trade dress.

The Court granted Dunkin' Donuts' motion for a temporary restraining order (the "TRO") on March 31, 2009.

> The TRO ordered that Defendants were:
>
> A. Enjoined and restrained from taking any further action under the Dunkin' Donuts name, marks, and trade dress, including but not limited to sales to the public or operation of a restaurant under such marks;
> B. Required to remove and replace all Dunkin' Donuts marks and distinctive trade dress from the restaurant at 1901 S. Mannheim Road, Westchester, Illinois, in accordance with the Westchester Franchise Agreement and Dunkin' Donuts de-identification guidelines; and
> C. Required to immediately return to Plaintiffs all operating manuals, plans, specifications, and other materials containing information prepared by Dunkin' Donuts and relative to the operation of a Dunkin' Donuts shop, including but not limited to all signs bearing Dunkin' Donuts marks; and
> D. Required to amend the business name of Mazen Dunkin Donuts, Inc. with the Illinois Secretary of State such that, at a minimum, the word "Dunkin" or "DD" is not included within the corporate name or any related assumed business name; and
> E. Required to de-list the restaurant at 1901 S. Mannheim Road, Westchester, Illinois, as a Dunkin' Donuts establishment in all telephone directories (whether in paper or electronic form) and any business organization with which Defendants are affiliated; and
> F. Required to discontinue any further orders from or through the Dunkin' Donuts distribution systems.

Order Granting Plaintiffs' Motion for Temporary Restraining Order, March 31, 2009.

Dunkin' Donuts now asserts that Defendants have willfully refused to comply with the TRO, and continue to operate the Westchester Store in violation of Dunkin' Donuts' property rights, the post-term covenants of the Franchise Agreement, and the Stipulation. Dunkin' Donuts has submitted photographic and other evidence in support of this assertion.

Before the Court is Dunkin' Donuts' Motion for Preliminary Injunction and Attorneys' Fees. The Motion is fully briefed and ripe for ruling.

## II. DISCUSSION

### A. Standard of Decision

#### *1. Preliminary Injunction*

The Seventh Circuit has indicated that District Courts must proceed with care when adjudicating motions for preliminary injunction. "[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 389 (7th Cir. 1984). In order to determine whether a preliminary injunction is warranted, a District Court must engage in a two-step analysis. Girl Scouts of Manitou Council, Inc. v. Girls Scouts of the United States of America, Inc., 549 F.3d 1079, 1085-86 (7th Cir. 2008).

In the threshold phase of the analysis, the party seeking the preliminary injunction must show that (1) without a preliminary injunction, "it will suffer irreparable harm in the interim period prior to final resolution of its claims;" (2) "traditional legal remedies would be inadequate;" and (3) "its claim has some likelihood of succeeding on the merits." Id. at 1086 (citing Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001); Lawson Prods., Inc. v. Avnet, Inc., 782 F.2d 1429, 1433 (7th Cir. 1986)). If the District Court finds that the moving

party has failed to establish any one of these requirements, it must deny the motion for injunction. Girl Scouts, 549 F.3d at 1086. However, if the moving party has satisfied the threshold requirements, the Court will proceed to the balancing phase of the inquiry. Id.

In the balancing phase, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." Id. The Court must use a sliding scale approach to this balancing test: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more it need weigh in his favor." Roland Mach., 749 F.2d at 387. Where appropriate, the Court should also take into account the effect that granting or denying the injunction would have on the public interest. Girl Scouts, 549 F.3d at 1086.

### 2. *Attorneys' Fees*

The Lanham Act provides that the Court may grant an award of attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). The Seventh Circuit has indicated that exceptional cases include those in which the infringing acts are deemed to be "malicious, fraudulent, deliberate or willful." BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1099 (7th Cir. 1994).

### B. Plaintiffs' Motion for Preliminary Injunction

#### 1. *The Threshold Inquiry*

As to the first and second threshold requirements, it is well-established in the Seventh Circuit that irreparable harm and inadequate remedy at law are presumed in trademark and trade dress infringement cases. "We have clearly and repeatedly held that damage to a trademark

holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." Re/Max N. Cent., Inc. v. Cook, 272 F.3d 424, 432 (7th Cir. 2001); Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 469 (7th Cir. 2000) ("Irreparable harm is generally presumed in cases of trademark infringement and dilution."); Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852, 858 (7th Cir. 1982) ("This and many other Courts have often recognized that the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law."). The Seventh Circuit's willingness to find irreparable harm in trademark cases stems from its understanding that:

> The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.

Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1092 (7th Cir. 1988). The Court therefore determines that Dunkin' Donuts has satisfied the first two threshold requirements for a preliminary injunction.

As to the third threshold requirement, Dunkin' Donuts has submitted photographic evidence showing that the Westchester Store appears in many respects to be very similar to a Dunkin' Donuts store. For example, the Westchester Store color scheme remains the same raspberry, pink, and orange associated with Dunkin' Donuts; the font used in the Westchester Store's signage and menus is the same "frankfurter" style utilized by Dunkin' Donuts; and the Westchester Store's drive-through menu offers products named "Coolata" and "Munchkins," which are registered Dunkin' Donuts' trademarks. Moreover, Defendants' corporate name

continues to be "Mazen Dunkin Donuts." There is thus no question that Dunkin' Donuts has established that its trademark and trade dress infringement claims, as well as its unfair competition claims, have "some likelihood of succeeding on the merits." Girl Scouts, 549 F.3d at 1086. In fact, as the Court will explain below, Dunkin' Donuts has much more than a mere likelihood of success in this case. The Court therefore finds that Dunkin' Donuts has met the threshold requirements for a preliminary injunction against Defendants.

## 2. *The Balancing Test*

Elkhatib was initially licensed to use Dunkin' Donuts' trademarks, trade dress, and trade name subject to the terms of the Franchise Agreement. Upon termination or expiration of the Franchise Agreement, Elkhatib agreed to:

> [I]mmediately cease to use, by advertising or in any other manner whatsoever, any feature or method associated with the Dunkin' Donuts System, any or all of the Proprietary marks and any other trade secrets, confidential information, operating manuals, slogans, trade dress, signs, symbols or devices forming part of the Dunkin' Donuts System or otherwise used in connection with the operation of the Dunkin' Donuts Shop.

Franchise Agreement, ¶ 9.4.2. Elkhatib also agreed, upon termination or expiration of the Franchise Agreement, to return to Dunkin' Donuts all operating manuals, plans, specifications, and other materials containing information prepared by Dunkin' Donuts regarding the operation of a Dunkin' Donuts store. Id., ¶ 9.4.3 The Franchise Agreement expired by its terms on April 13, 2008. However, as the Court has already noted, Elkhatib and Dunkin' Donuts later entered into the Stipulation, allowing Elkhatib to continue to operate the Westchester Store until the end of trial in the parties' prior litigation. That trial ended in Dunkin' Donuts' favor on March 13,

2009. It is thus apparent that Defendants are no longer authorized to utilize Dunkin' Donuts' trademarks and trade dress.

Any further unauthorized use of Dunkin' Donuts' trademarks or trade dress by Defendants would therefore almost certainly be a violation of the Lanham Act. See Ty, Inc., 237 F.3d at 897 (in order to prevail in a trademark infringement case, a plaintiff must show "(1) that it has a protectible trademark, and (2) a likelihood of confusion as to the origin of the defendant's product."); Syndicate Sales, Inc. v. Hampshire Paper Corp., 192 F.3d 633, 636 (7th Cir. 1999) (in order to prevail in a trade dress infringement case, a plaintiff must show that "(1) its trade dress is either inherently distinctive or has acquired secondary meaning, and (2) that the similarity of the defendant's trade dress causes a likelihood of confusion on the part of consumers as to the source or affiliation of the products."). Where a holdover franchisee such as Elkhatib utilizes the franchisor's marks, the "likelihood of confusion is inevitable." Dunkin' Donuts, Inc. v. N. Queens Bakery, Inc., 216 F. Supp. 2d 31, 44 (E.D. N.Y. 2001); Bunn-O-Matic Corp. v. Bunn Coffee Serv., 88 F. Supp. 2d 914, 922 (C.D. Ill. 2000) ("The likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license."); Dunkin' Donuts v. Towns Family, No. 95-3666, 1996 U.S. Dist. LEXIS 7982, at *12 (N.D. Ill. June 11, 1996) ("there is a near certainty of confusion for purposes of § 32 [of the Lanham Act] when a franchisee continues to use marks owned by the franchisor after the Franchise Agreement has been terminated."). The Court therefore finds that Dunkin' Donuts is highly likely to ultimately prevail in this matter. Accordingly, the "sliding scale" the Court must utilize in its balancing test tips decidedly in Dunkin' Donuts' favor. See Roland Mach., 749 F.2d at 387.

Proceeding with the balancing test, the Court determines that Dunkin' Donuts will suffer significant harms if Defendants are allowed to continue operating the Westchester Store in its present configuration, while the potential harm to Defendants arising from an erroneously entered preliminary injunction to Defendants is minimal. Dunkin' Donuts asserts, and Defendants do not dispute, that Dunkin' Donuts has expended considerable resources in creating and promoting its trademarks and trade dress, and in enforcing standards for stores utilizing those marks. The law is clear that the sort of damage holdover franchisees such as Elkhatib cause to franchisors such as Dunkin' Donuts is irreparable. See Re/Max N. Cent., 272 F.3d at 432; N. Queens Bakery, Inc., 216 F. Supp. 2d at 44. The harm the preliminary injunction would cause Defendants is easily calculated and compensable should they ultimately prevail in this action. See Cal City Optical v. Pearle Vision, No. 93-7577, 1994 U.S. Dist. LEXIS 3823, at *2 (N.D. Ill. March 29, 1994) ("the termination of [a] Franchise Agreement does not destroy the business," and any harms suffered if a franchise is wrongfully terminated can be "readily compensated by money damages, based on the value of [the franchisee's] lost investment and the business conducted by the store subsequent to the termination of [the] franchise."). Moreover, even if Dunkin' Donuts prevails (which is the far more likely outcome), nothing prevents Elkhatib from operating a doughnut shop, or any other sort of business, that does not infringe upon Dunkin' Donuts' trademarks, name, and dress.

Finally, the public interest will be served by a preliminary injunction in this case "because enforcement of the trademark laws prevents consumer confusion." Eli Lilly & Co., 233 F.3d at 469; see also Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 814 (7th Cir. 2002) ("the strong likelihood of consumer confusion weighs strongly in favor of issuing the injunction, and

the district court did not abuse its discretion in finding this to be the case."). The Court thus finds that Dunkin' Donuts has satisfied the balancing phase of the preliminary injunction inquiry. A Preliminary Injunction shall therefore issue.

## C. Plaintiffs' Motion for Attorneys' Fees

Although Dunkin' Donuts reasonably asserts that Defendants have defied the Court's TRO, the Court is not (yet) convinced that Defendants have infringed Dunkin' Donuts' trade marks and dress maliciously or deliberately. See BASF Corp., 41 F.3d at 1099. Dunkin' Donuts' Motion for Attorneys' Fees is therefore denied. However, should Defendants fail to comply with the Court's Order of Preliminary Injunction within a reasonable time frame, Dunkin' Donuts is granted leave to refile its Motion for Attorneys' Fees.

## III. CONCLUSION

For the foregoing reasons, Dunkin' Donuts Motion for a Preliminary Injunction is granted. A Preliminary Injunction order will issue separately. Dunkin' Donuts' Motion for Attorneys' Fees is denied.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: July 17, 2009